Peter Hand Brewing Company, Plaintiff in Error, v.
Peter Feller, Defendant in Error.

Gen. No. 16,249.

VERDICTS—*when not disturbed as against the evidence.* A ver-
dict will not be set aside as against the evidence unless clearly and
manifestly so.

Error to the Municipal Court of Chicago; the Hon. WILLIAM N.
GEMMILL, Judge, presiding. Heard in the Branch Appellate Court
at the March term, 1910. Affirmed. Opinion filed March 28, 1912.

MAYER, MEYER, AUSTRIAN & PLATT, for plaintiff in
error.

J. MARION MILLER, for defendant in error.

MR. JUSTICE GRIDLEY delivered the opinion of the
court.

This is a writ of error prosecuted by the Peter Hand
Brewery Company, a corporation, plaintiff below, and
hereinafter designated as the company, to reverse a
judgment of the Municipal Court of Chicago in favor
of Peter Feller, defendant below. The company
brought suit to recover the sum of $500.25, and inter-
est thereon, which sum it claims to have loaned and
advanced to Feller, about May 1, 1908, for a saloon
license at No. 2 Winnemac avenue, Chicago, for the
six months' period from May 1, 1908, to October 31,
1908. Feller demanded a jury trial, which was had,
resulting in a verdict in his favor, upon which judg-
ment was entered.

That such license was issued to Feller and that the
company paid for the same out of its funds is not con-
troverted. The question is, did Feller verbally agree
to repay said sum absolutely, or did he only agree to
do so indirectly, and conditioned upon his paying for

such beer as he should order of the company at a
higher price per barrel than the usual market price?
Counsel for the company claims that Feller absolutely
agreed to repay the money advanced for the license,
and that the verdict of the jury in favor of Feller is
manifestly against the weight of the evidence.

It appears that for several years prior to May 1,
1908, Feller had been in the saloon business, and for
at least two years had been running a saloon at No.
49 Willow street, and purchasing his beer from the
company. Shortly prior to May 1, 1908, he began
negotiations for a lease of premises at No. 2 Winne-
mac avenue, where he contemplated opening a saloon.
The company, hearing of these negotiations, sent an
agent to see him, who persuaded him to call at the
office of the company, which he did during the latter
part of April. He was there interviewed by several
of the representatives of the company, including the
president thereof, and he was urged to buy his beer
for the new saloon from the company. Before he left
the office he signed three documents: (1) application
for a saloon license at No. 2 Winnemac avenue for a
six months' period, (2) the usual bond (on which the
president of the company and an employe thereof
signed as sureties) and (3) an assignment of the right
of renewal of said license to said president of the
company. Considerable talk preceded the signing of
the papers, and what that talk was has an important
bearing upon the issue in the case. Feller, in his own
behalf, testified, in substance, that he first saw the
president of the company; that he was called into the
latter's private office; that the president said to him,
"I hear you have a place out there; we will do the
same *as we used to do;* you have to pay $6 for your
beer, the same as you used to do, and *we furnish the
license* and fixtures and everything in there"; that he
then talked with the office manager of the company;
that the latter told him the same thing, in substance,

as the president had, and further said, without read-
ing the papers to him, "Just sign them papers", which
he did.   The evidence tends to show that Feller was
unable to read and did not have full knowledge of the
contents of said documents.    The president of the
company did not take the stand, and, therefore, Feller
is the only witness as to his conversation with the
president.   The testimony of the office manager as to
his conversation with Feller is, in substance, that after
the papers were signed "I asked Feller how are you
going to pay for this license, and he says, You know
how we always do, I will pay you for that license as
we always do it.   I said, that will be entirely satis-
factory"; that Feller had been doing business with
the company for four or five years; that he paid his
license in irregular amounts, sometimes $100, and
sometimes he would give the driver $10 or $15 in addi-
tion to the beer charges, and sometimes he used to
come and pay down something at the office; that he
had always paid enough when the term of the license
expired to be clean on the books, and that the company
furnished to all its customers a so-called "beer book,"
in which was written by the driver the number of bar-
rels delivered at a particular time, and in which the
amounts charged for the beer and all credits for pay-
ments made either to the driver or at the office were
also written.   The "beer book" of Feller, covering the
period from May 7, 1906, to May 9, 1908 (when it was
balanced and closed), for beer delivered to him at his
Willow street saloon, was introduced in evidence, and
it clearly disclosed what the parties hereto "used to
do", and how the license fee, advanced by the com-
pany, for each six months' period was paid.   Feller
was charged at the beginning of such period with the
amount of the license fee, and was thereafter charged
for all beer delivered to him at the rate of $6 per bar-
rel; he was credited with all cash payments, made
either to the driver or at the office, and at the end of
each month, if he made sufficient payments at said

rate of $6 per barrel to also repay to the company the month's proportion of said license fee, so advanced, he was allowed a rebate of $1.50 per barrel. Of course, if he was slow in his payments and had not paid at the end of any month a sufficient amount to give the company $4.50 for each barrel delivered, and also repay a proportionate amount of the license fee advanced, it was within the power of the company, under this arrangement, not to allow him any rebate. This "beer book" shows, during the first six months at least of the period covered therein, that Feller was a good customer, and made such payments that, on Nov. 1, 1906, when the next license fee became due, after all rebates had been made, he had about $335 to his credit, which was used by the company to pay said new license fee, and he started in on the next six months' period owing the company only about $165, with the license fee paid.

On May 1, 1908, although Feller had received a written lease, the owner of the premises on Winnemac avenue was unable to deliver possession to Feller, owing to the fact that the former tenant refused to yield possession. Pending negotiations for such possession, a temporary building was erected at the rear of said premises, and Feller there started in business. Subsequently Feller, not being able to secure possession of the premises he had leased, closed the temporary saloon, opened a saloon in another location and purchased his beer for that saloon from another brewery. In November, representatives of the company called upon him and demanded payment for the license fee advanced in May, and upon Feller's refusal to make payment, either in cash or by notes, threatened to sue him. Later in November, Feller visited the office of the company, had an interview with the office manager, and, according to the latter's testimony (in which he is corroborated by other representatives of the company who were specially directed by said manager

to listen to the conversation), admitted that he owed the company for said license fee. Feller denies making any such admission.

After carefully considering all of the evidence in the record, and particularly in view of the facts disclosed from said "beer book," and that at the time Feller signed the application for said license he also executed to the president of the company an assignment of the right of renewal of said license, we cannot say that the verdict of the jury is manifestly against the weight of the evidence, and, therefore, we are not disposed to reverse the judgment.

Other errors assigned are that the trial court erred in refusing to admit in evidence certain books of account of the company, and in making certain remarks in the hearing of the jury which, it is claimed, were prejudicial to the company, and that certain remarks made by counsel for Feller in his address to the jury were also prejudicial to the rights of the company. Without discussing these different points, suffice it to say that, in our opinion, the errors complained of, if any, are not sufficient, in view of all the evidence, to warrant a reversal. The judgment is affirmed.